# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

        Plaintiff,

    v.                       No. **CR 02-1574 MCA**

**DAVID HUDAK**,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S SUPPLEMENTALMOTION
## AND ALTERNATIVE REQUEST FOR CONDITIONS OF RELEASE

THIS MATTER comes before the Court on Defendant David Hudak's *Supplemental Motion for Conditions of Release Because Mr. Hudak Has Now Spent One Year and Eight Days in Custody on a Non-Violent Charge Which the Government Has Characterized as a "Licensing and Regulatory Offense"* [Doc. No. 306] filed on August 21, 2003, and the alternative request for conditions of release stated in Defendant's *Motion to Chief United States District Court Judge for the District of New Mexico Requesting a Judicial Assignment to Any United States District Court Judge Who Can Commence the Trial During the Week of August 18, 2003, or in the Alternative, Request that Conditions of Release Be Set* [Doc. No. 281] filed on August 18, 2003.  Hearings on Defendant's supplemental motion and alternative request were held in Albuquerque, New Mexico on August 22, 2003, and August 27, 2003.  Defendant was present at these hearings.  Having reviewed the record of all prior detention hearings in this matter, the reports and recommendations of the Pretrial Services

Office, the additional evidence, proffers, and arguments of counsel, and all available information regarding the factors enumerated in 18 U.S.C. §§ 3142(g), I conclude that Defendant is not entitled to be released from pretrial detention at this time under the Bail Reform Act, 18 U.S.C. §§ 3141 to 3146, because no condition or combination of conditions will reasonably assure his appearance  as required and the safety of any other person and the community.  Considering other relevant factors in addition to those enumerated in 18 U.S.C. § 3142(g), I further conclude that the Due Process Clause of the Fifth Amendment to the United States Constitution does not require that Defendant be released from pretrial detention at this time.  The basis for these determinations was stated on the record at the hearing on August 27, 2003, and is set forth in the following findings of fact and conclusions of law.

## I.      FINDINGS OF FACT

1.      Defendant was arrested on or about August 16, 2002, pursuant to an arrest warrant issued and executed by federal authorities.  [Doc. No. 4.]  Defendant has been detained pending trial since that date.

2.      Pursuant to a motion filed by the United States [Doc. No. 8], a detention hearing was held before United States Magistrate Judge Karen Molzen on August 27, 2002. [Doc. No. 11.]  Judge Molzen ordered that Defendant be detained without bond at that time. [Doc. No. 12; Tr. 8/27/02.]

3.      Defendant was arraigned on the *Indictment* [Doc. No. 13] in this case on September 12, 2002.  At that time, Defendant's trial was scheduled to commence on November 12, 2002.  [Doc. No. 16.]

4.     Senior United States District Judge John Conway became the presiding district judge in this case pursuant to a *Minute Order* filed on September 17, 2002.  [Doc. No. 19.] The case was designated as complex pursuant to the Speedy Trial Act shortly thereafter. [Sealed Doc.]

5.     On November 4, 2002, Defendant moved to revoke Judge Molzen's detention order.  [Doc. No. 27.]  Judge Conway held a hearing on *Defendant's Motion to Revoke Magistrate Judge's Detention Order* on November 14, 2002 [Doc. No. 32; Tr. 11-14-02], and filed an *Order* denying Defendant's motion the following day.  [Doc. No. 33.]

6.     The issue of rescheduling the date on which Defendant's trial would commence also was briefly addressed at the conclusion of the hearing on November 14, 2002.  [Doc. No. 32; Tr. 11-14-02.]  The trial date was rescheduled for January  21, 2003.

7.     On December 13, 2002, the Government filed an unopposed motion to continue the January 21, 2003, trial date [Doc. No. 36], and Defendant filed an unopposed motion to extend the deadline for filing pretrial motions [Doc. No. 35.]  Judge Conway granted both of these motions, and the trial date was reset for March 10, 2003.  [Doc. No. 37, 38.]

8.     On January 15, 2003, Defendant filed a motion for appointment of counsel in which he alleged that he had become financially unable to continue retaining counsel at that time.  He requested that two attorneys be appointed to represent him due to the complex nature of the case.  [Doc. No. 41.]  United States Magistrate Judge Richard Puglisi granted Defendant's motion on the same day it was filed, and Robert Gorence joined the defense

team as co-counsel.  [Doc. No. 42, 43, 44.]

9.     On February 5, 2003, Defendant's trial date was rescheduled for March 31, 2003.  [Doc. No. 47.]  On March 10, 2003, the Government filed an opposed motion to continue the March 31, 2003, trial date.  [Doc. No. 52.]  In its motion, the Government noted that a *Superseding Indictment* naming additional defendants had been filed on March 6, 2003, [Doc. No. 53] and that the March 2003 trial date did not afford these new defendants the statutory minimum of 30 days to prepare for trial.  Following a hearing on March 13, 2003 [Doc. No. 54], Judge Conway issued an *Order* granting the Government's motion and vacating the March 2003 trial date [Doc. No. 55.]

10.     On March 14, 2003, Defendant filed a motion asserting his right to a speedy trial or in the alternative for the severance of the three counts in the *Superseding Indictment* which included charges against other defendants.  [Doc. No. 59.]  On that same date, Defendant filed a motion asking the Court to reconsider its denial of his previous request that conditions of release be set.  [Doc. No. 60.]  On April 1, 2003, Judge Conway held a hearing on pending motions, at which he established a trial setting of August 19, 2003, and denied Defendant's motion regarding conditions of release as well as his speedy-trial motion.  [Doc. No. 73; Tr. 4-1-03.]  Judge Conway's rulings were reflected in written *Orders* filed on April 16, 2003.  [Doc. No. 76, 77, 78, 79.]

11.     In response to a motion by the Government [Doc. No. 105], Judge Conway issued an *Order* on June 24, 2003, which scheduled a pretrial conference and motions hearing for July 17, 2003, and established a deadline of July 1, 2003, for the filing of

motions in limine [Doc. No. 108].  On June 26, 2003, Defendant filed a motion requesting that the pretrial deadlines be extended.  [Doc. No. 110.]  On July 3, 2003, Judge Conway granted Defendant's motion and established a new set of pretrial deadlines.  [Doc. No. 117.]

12.     The parties continued to file motions after the pretrial deadlines established in Judge Conway's *Order*.  In addition, the Government filed a *Second Superseding Indictment* on August 6, 2003.  [Doc. No. 178.]  Judge Conway held pretrial conferences on July 17, 2003 [Doc. No. 119], July 24, 2003 [Doc. No. 137], and August 11, 2003 [Doc. No. 233] to address pending motions.

13.     On August 15, 2003, the Government filed a motion to continue the trial set for August 19, 2003, which was later supplemented on August 17, 2003.  [Doc. No. 279, 269.]  On August 15, 2003, the Government also filed a motion which purported to join in an oral motion to recuse Judge Conway that allegedly was made by defense counsel during a telephonic conference on August 12, 2003.  [Doc. No. 280.]  Defense counsel later denied making such an oral motion, noting that the telephonic conference referenced in the Government's motion was not on the record.  [Doc. No. 306; Tr. 8-21-03.]

14.     On August 18, 2003, Judge Conway issued an *Order* vacating the August 2003 trial setting and recusing from this case.  [Doc. No.  277.]  On that same date, Defendant moved to have the case set for trial before another judge during the week of August 19, 2003, and to revisit the issue of conditions of release.  [Doc. No. 281.] Chief United States District Judge James Parker issued an *Order* scheduling a hearing on August 22, 2003, regarding Defendant's request for conditions of release.  [Doc. No. 282.]  This case was then assigned

to me.

15.     At the hearing on August 22, 2003, Defendant presented the testimony of his parents regarding their offer to use their residence in Canada to secure Defendant's bond.

16.     Defendants' parents bought their residence in Canada in September 2002. They have owned their home free and clear of any debt since September 2002.

17.     Defendant has not shown that the substance of their testimony was not known to him at the time of the last detention hearing before Judge Conway in April 2003, or even at the time of the prior hearing on November 14, 2002.

18.     At the hearing on August 22, 2003, several Government exhibits were admitted into evidence.  The Government's exhibits relate to the warheads that Defendant is accused of illegally importing and possessing.  These exhibits do not contain information that weighs in favor of Defendant's pretrial release.

19.     Defendant is a Canadian citizen.

20.     The United States Government has presented information which raises significant questions about his immigration status.

21.     His spouse, two young children, and parents all reside in Canada.

22.     He has ongoing business interests in Canada.

23.     His community ties to the United States are minimal and are largely related to the business and property interests that are currently subject to forfeiture proceedings.

24.     The Government has presented information which raises significant questions about whether he has access to substantial financial resources which are presently

unaccounted for.

25.    His physical and mental condition, employment, and past conduct all indicate that he would be easily employable in other countries and could sustain a comfortable lifestyle therein notwithstanding his potential fugitive status in the United States.

26.    His history demonstrates that he is a seasoned traveler who can support himself abroad and can easily adapt to life in a foreign country for prolonged periods of time.

27.    Defendant has traveled to and held a bank account in the Bahamas.

28.    He has traveled frequently to the Middle East, Israel, and the United Arab Emirates.

29.    He has business and other contacts in these countries.

30.    He has had a business in the United Arab Emirates.

31.    He has resided in the United Arab Emirates for periods of several months at a time and gained temporary residency there.

32.    He has actively solicited business contracts in the Middle East.

33.    He has business contacts in Singapore.

34.    While it is possible that Defendant eventually could be extradited from one or more of the foreign countries to which might flee, the probable length of time to locate Defendant and complete the extradition process is so great that it would have a very deleterious effect on the prosecution of this case.

35.    The flight risk suggested by the available information regarding Defendant's history and circumstances increases significantly when considered in conjunction with the

50-year mandatory minimum sentence of incarceration that he is facing if convicted of the remaining charges in the *Second Superseding Indictment*.  The length of this mandatory minimum prison-sentence supports a finding that he is a flight risk.

36.     The nature and circumstances of the offenses with which Defendant is charged are very serious, and the weight of the evidence offered in support of those charges is significant.

37.     The charges at issue here arise, for the most part, from Defendant's importation of very large quantities of military-grade warheads with tremendous destructive capacity, and from his involvement in multimillion-dollar contracts for the provision of defense services (in the form of "counterterrorism training") to foreign military or paramilitary units.

38.     While the Government alleges no link between the crimes Defendant is alleged to have committed and any conspiracy to commit unlawful acts of violence against the people of the United States or any other country, it is reasonable to infer from the available information in the record that the large quantity of warheads at issue here could be readily assembled for detonation and that there is no obvious, legitimate reason why Defendant needed to stockpile these items in a bunker on New Mexico ranchland in order to conduct a lawful business here.

39.     The very nature and extent of these products and services, when considered in light of Defendant's continued employability in the field of defense services and his ties to foreign countries, significantly raises the seriousness of the danger that would be posed by

his release.

40.     I find that neither side is particularly to blame for delaying the trial of this case or needlessly increasing its complexity.   While still in its early stages, this case was designated as complex.   Large amounts of materials were produced in discovery.   A significant amount of expert testimony is anticipated.   Defendant found it necessary to request a second attorney to represent him, in part because of the complexity of the case.   On these facts, I attribute most of the delay prior to Judge Conway's recusal to the sheer complexity of the case, which is not a product of either side's trial strategy.

41.     Due to the parties recent filings, the complexity of this case has increased since it was designated as such in September 2002.   However, I do not find that the strategy or conduct of either party has added needlessly to the complexity of the case or the delay occasioned by that complexity.

42.     In particular, I find that the recusal of Judge Conway is a neutral factor that cannot be attributed to the fault of either party.   Neither party is to blame for prompting Judge Conway's recusal from this case, or for the delay occasioned by the transfer of this case to a new judge.   My finding in this regard does not depend on whether or when either side may have filed, joined, or discussed a motion to recuse Judge Conway on or off the record.   The fact is that Judge Conway recused, and we move forward from there.

43.     Both parties have represented that they are ready to go to trial.

44.     The parties also have represented that the trial is expected to take approximately six weeks to complete.

45.   October 15, 2003, is the earliest date that the trial can reasonably be expected to commence given the current filings on the docket in this case (some of which are likely to require an evidentiary hearing prior to trial), as well as the need complete the procedures that are necessary to assemble a panel of qualified prospective jurors who are capable of serving in such a lengthy trial.  Accordingly, and I have set a trial date of October 15, 2003.

46.   I also have advised the parties that the pretrial deadlines previously established by Judge Conway will remain in effect and that they will be required to seek leave of the Court before filing any additional motions.  If a party requests leave to file additional motions, I will consider at that time whether that request may delay the trial and whether that request may result in either a violation of Defendant's right to a speedy trial (in the case of motions filed by the Government) or a waiver of that right (if filed by the Defendant).

47.   I do not rely on a statutory presumption in favor of detention in this case, and the burden of proving grounds for detention under the Bail Reform Act rests at all times on the Government.

48.   I find that there are no grounds for reviewing Judge Conway's prior detention order under 18 U.S.C. § 3142(f) insofar as Defendant has not presented information that was not known at the time of his previous hearing and that has a material bearing on the issue of conditions of release.

49.   In the alternative, based on my independent *de novo* review of all available information in the record, I find by a clear preponderance of the evidence that there is no condition or combination of conditions of release which will reasonably assure the

10

appearance of Defendant as required, notwithstanding his parents' offer to use their residence in Canada to secure his bond.

50.     In the alternative, based on my independent *de novo* review of all available information in the record, I find by clear and convincing evidence that there is no condition or combination of conditions of release which will reasonably assure the safety of any other person and the community.

## II.     LEGAL ANALYSIS AND CONCLUSIONS OF LAW

### A.     <u>Detention Under the Bail Reform Act</u>

In <u>United States v. Cisneros</u>, 328 F.3d 610, 614 (10th Cir. 2003), the Tenth Circuit summarized the statutory framework under which a detention order issued pursued to the Bail Reform Act, 18 U.S.C. §§ 3141 to 3156, may be subsequently reviewed or reconsidered by the presiding district judge.  Under this framework, the grounds for reopening a detention hearing upon a motion by the Defendant depend in part on whether a magistrate judge or a district judge presided over the prior detention hearing.  The procedure employed when the Defendant seeks to have a district judge review and revoke a detention order issued by a magistrate judge is set forth in 18 U.S.C. § 3145(b).  <u>See</u> <u>Cisneros</u>, 328 F.3d at 614.  The procedure employed when the Defendant seeks to have a detention order reconsidered by the same district judge who presided over the previous detention hearing is set forth in 18 U.S.C. § 3142(f).  <u>See</u> <u>Cisneros</u>, 328 F.3d at 614.

The most recent detention order issued in this case was signed by Judge Conway and filed on April 16, 2003.  It is this detention order issued by Judge Conway that Defendant

asks me to revoke at this time.  I am now the presiding district judge, and thus I stand in place of Judge Conway for the purpose of reviewing earlier detention orders under the Bail Reform Act.  Accordingly, the procedure set forth in 18 U.S.C. § 3142(f) applies in this instance.[1]

18 U.S.C. § 3142(f) only provides for reopening the detention hearing under these circumstances if there is a threshold finding by the presiding district judge "that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f); see Cisneros, 328 F.3d at 614.  In order to meet this threshold requirement, a defendant must do more than merely present some new information that was not previously before the Court.  Rather, the defendant must show that such evidence was not known to him at the time of the previous hearing.  See United States v. Dillon, 938 F.2d 1412, 1415 (1st Cir. 1991); United States v. Ward, 235 F. Supp. 2d 1183, 1185 (N.D. Okla. 2002).

In order to show that the previously unknown information has a "material bearing" on the issue of conditions of release, that information must relate to the relevant factors listed in 18 U.S.C. § 3142(g), namely:

---

[1]Neither of the parties have presented any information to suggest that Judge Conway's prior detention order was affected in any way by the grounds that led to his decision to transfer this case to another judge.  On the contrary, it is reasonable to infer that the grounds for Judge Conway's decision did not arise until the days immediately preceding his *Order* filed on August 18, 2003.  [Doc. No. 277.]

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including--
(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;  and
(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law;  and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Thus, for example, if some of the evidence against the defendant was suppressed after the date of the previous detention hearing, the fact that such evidence was suppressed is likely to have a material bearing on the strength of the Government's case on the merits, which is a relevant factor under 18 U.S.C. § 3142(g).  See, e.g., United States v. Shareef, 907 F. Supp. 1481, 1483 (D. Kan. 1995).  It is not necessary, however, that the previously unknown information bearing on the above factors be admissible under the Rules of Evidence.  "The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f).

13

If the defendant meets the threshold requirements stated in 18 U.S.C. § 3142(f), then the presiding district judge may review the previously unknown information, along with all the other available information in the record from the previous hearings, that bears on the factors listed in 18 U.S.C. § 3142(g).  In reviewing the available information concerning these factors, the presiding judge must keep in mind that the Government generally bears the burden of proof at a detention hearing.[2]  Risk of flight must be proven by a preponderance of the evidence, while dangerousness to any other person or to the community must be proven by clear and convincing evidence.  See Cisneros, 328 F.3d at 616.

Applying these standards, I conclude that there are no grounds for reviewing Judge Conway's prior detention order under 18 U.S.C. § 3142(f) insofar as Defendant has not presented information that was not known at the time of his previous hearing and that has a material bearing on the issue of conditions of release.  As noted above in my findings of fact, there is no basis for concluding that the additional information presented through the testimony of Defendant's parents at the hearing on August 22, 2003, was unknown at the time of the prior hearing before Judge Conway.  Defendant has not shown that he was previously unaware of the possibility that the residence purchased by his parents in 2002 might be offered to secure his bond.

At the time of the prior detention hearing before Judge Conway, Defendant did not

---

[2]At the hearing at which I presided on August 22, 2003, the Government conceded that the charges against Defendant do not give rise to a statutory, rebuttable presumption in favor of detention pursuant to 18 U.S.C. § 3142(e).  Thus, my analysis is based on the premise that the burden of proving grounds for the continued detention of Defendant rests at all times on the Government.

know that the trial date of August 19, 2003, would be vacated or that Judge Conway would transfer the case to another judge.  Although the length of detention is relevant to the constitutional due-process inquiry discussed below, this new information about the length of Defendant's detention does not, in itself, have a direct and material bearing on the statutory factors listed in 18 U.S.C. § 3142(g).  For these reasons, Defendant's supplemental motion and alternative request regarding conditions of release do not meet the threshold requirements for additional review or reconsideration of a prior detention order under 18 U.S.C. § 3142(f).

Assuming, in the alternative, that I am required to make a *de novo* review of all prior and present information in the record, I reach the same ultimate conclusion that Judge Conway reached based on such a review and in consideration of the statutory factors listed in 18 U.S.C. § 3142(g), including that information presented at the prior detention hearings and at the hearings on August 22, 2003, and August 27, 2003.  In particular, I conclude based on a *de novo* review of all the available information that Defendant must be detained before trial because "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).  In reaching this conclusion, I have first considered whether Defendant presents a risk of flight.  As described above in my findings of fact, Defendant's history and characteristics closely resemble the paradigmatic example of a flight risk described in the legislative history to the Bail Reform Act.  In stating the rationale for creating a rebuttable presumption in favor of detaining persons accused of committing certain drug offenses, the

Senate Committee on the Judiciary noted that:

> Because of the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country, these persons have both the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences.

S. Rep. No. 98-225, at 20 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203.  Courts have extended this reasoning to individuals charged with other types of offenses that involve "sophisticated criminal conduct, whose successful completion required the ability to travel internationally, to adapt easily to foreign countries, and to move assets and individuals quickly from one country to another."  United States v. Townsend, 897 F.2d 989, 994 (9th Cir. 1990); accord United States v. El Hage, 213 F.3d 74, 77-78 (2d Cir. 2000).

While Defendant is not charged with an offense involving drugs or terrorism, and I do not rely on any rebuttable presumption in favor of detention here, the available information in the record indicates that he is involved in a "lucrative" business involving international defense contracts totaling millions of dollars, has "established substantial ties outside the United States," and has "both the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution."  S. Rep. No. 98-225, supra, at 20.  The available information of record also suggests a form of "sophisticated criminal conduct, whose successful completion required the ability to travel internationally, [and] to adapt easily to foreign countries."  Townsend, 897 F.2d at 994.

The *Second Superseding Indictment* charges Defendant with "offenses punishable by lengthy prison sentences."  S. Rep. No. 98-225, at 20.  In particular, Defendant faces a

mandatory minimum prison sentence of 50 years if convicted of all remaining charges in the *Second Superseding Indictment*.  Other courts have noted the likelihood that such a lengthy prison sentence will create a motive to flee.  See, e.g., Townsend, 897 F.2d at 995.

The fact that Congress saw fit to establish lengthy prison sentences for the offenses with which Defendant is charged tends to defeat any effort to characterize these offenses as mere "licensing or regulatory offenses."  For purposes of assessing whether Defendant is a flight risk or a danger to the community, I regard such a characterization to be inaccurate or, at best, misleading.  My findings reflect that the nature and circumstances of the offenses with which Defendant is charged are very serious, and that the weight of the evidence offered in support of those charges is significant.  When combined with the information suggesting that Defendant has "resources available to h[im] to abscond," his "present knowledge of the seriousness of the charges" against him supports the conclusion that he is a flight risk. Cisneros, 328 F.3d at 618.

In light of my findings of fact and the legal authorities cited above, I conclude that the Government has met its burden of showing by a clear preponderance of the evidence that Defendant must be detained before trial because no condition or combination of conditions will reasonably assure his appearance as required.  My findings and conclusions regarding the risk of flight alone provide sufficient grounds for Defendant's pretrial detention under the Bail Reform Act.

Nevertheless, I also have considered whether the release of Defendant would present a danger to any other person or the community.  Based on my findings regarding the nature

and seriousness of the charges, the weight of the evidence, Defendant's ties with foreign

countries, and his continued employability in the field of defense services, I also conclude,

in the alternative, that the Government has met its burden of proving by clear and convincing

evidence that Defendant must be detained before trial because there is no condition or

combination of conditions of release that could be imposed with respect to this Defendant

that would reasonably assure the safety of any other person and the community.

In this regard, I note the following remarks in the legislative history of the Bail

Reform Act:

> [A] case may involve circumstances that, while not set forth in the section as
> a basis for a rebuttable presumption of dangerousness, nevertheless are so
> strongly suggestive of a person's willingness or inclination to resort to criminal
> violence as to warrant the inference that the person would be a danger to
> society even if released on the most restrictive conditions. The Committee has
> in mind, for example, the case of a person charged with an offense involving
> the possession or use of a destructive device. In the Committee's view, it
> would be difficult not to regard as an unreasonable risk to the safety of others
> a person who uses such a weapon in the course of committing a crime, or who
> possesses it under circumstances indicating a readiness or willingness to use
> it carry out the crime.

S. Rep. No. 98-225, *supra*, at 19. The view that possession of destructive devices may

present a significant risk of harm to other persons is shared by several courts that have

interpreted and applied the Bail Reform Act. See, e.g., United States v. Dodge, 842 F. Supp.

181, 184-85 (D. Conn. 1994), quoted with approval in United States v. Newman, 125 F.3d

863, 1997 WL 603740, at *1 (10th Cir. 1997) (unpublished disposition); United States v.

Colon-Osorio, 188 F. Supp. 2d 153, 154 (D.P.R. 2002).

In this case, Defendant is charged with offenses involving the possession of thousands

of destructive devices that could easily have been readied for use under the circumstances in which Defendant stored them.  The tremendously high magnitude of harm that could result if such weapons were used supports a finding of dangerousness.  Further, while it is true that the destructive devices found in Defendant's possession are currently subject to forfeiture proceedings, his international connections and continued employability in this field support a reasonable inference that he could resume his involvement with such arms and defense services if he were released and he chose to abscond to a foreign base of operations.  For these reasons, I also conclude that Defendant remains subject to pretrial detention under the Bail Reform Act because "no condition or combination of conditions will reasonably assure the safety of any other person and the community."  18 U.S.C. § 3142(e).

## B.  <u>Due Process Requirements</u>

In addition to the statutory grounds discussed above, Defendant asserts that the Due Process Clause of the Fifth Amendment to the United States Constitution requires that he be released from pretrial detention at this time.  He asserts that his pretrial detention for more than one year and eight days is constitutionally impermissible.

The parties dispute whether or to what extent I am to conduct a *de novo* review of the evidence in analyzing Defendant's due-process claim.  I find this dispute to be immaterial because even under a *de novo* review of all available information in the record that bears on the factors which are relevant to the due-process inquiry, I conclude that Defendant's pretrial detention is not constitutionally excessive given the trial date of mid-October 2003.

"The government may detain a defendant prior to trial consistent with the Due Process

Clause of the Fifth Amendment so long as confinement does not amount to 'punishment of the detainee.'" United States v. Millan, 4 F.3d 1038, 1043 (2d Cir. 1993) (quoting Bell v. Wolfish, 441 U.S. 520, 535 (1979)).  Determining whether pretrial detention is so excessive in duration as to become punitive depends on whether the Government has a nonpunitive reason for the detention and whether the detention appears excessive in relation to that nonpunitive reason.  See id.  A defendant's risk of flight generally constitutes a nonpunitive reason for pretrial detention.  See Bell, 441 U.S. at 534; United States v. Gonzales, 149 F.3d 1192, 1998 WL 321218, at *3 (10th Cir. 1998) (unpublished disposition).

The Due Process Clause does not impose a uniform time limit on pretrial detention in all cases because due process is a flexible concept that must be tailored to the demands of a particular situation.  See generally Morrissey v. Brewer, 408 U.S. 471, 481 (1972); United States v. Acceturo, 783 F.2d 382, 388 (3d Cir. 1986).  In the context of assessing whether the Defendant's pretrial detention in this case is excessive in relation to the nonpunitive reasons articulated in the Bail Reform Act, I find that the following factors are relevant to the due-process inquiry:  (1) the length of the detention; (2) the extent of the prosecution's responsibility for the delay of the trial; and (3) the strength of the evidence concerning the flight risk or dangerousness upon which the detention was based.  See Millan, 4 F.3d at 1043; Gonzales, 1998 WL 321218, at *3.  I also consider the seriousness of the charges, the strength of the Government's case on the merits, the complexity of the case, and "whether the strategy of one side or the other has added needlessly to that complexity." Acceturo, 783 F.2d at 388; accord United States v. Hare, 873 F.2d 796, 801 (5th Cir. 1989).

As indicated in my analysis of the statutory factors enumerated in 18 U.S.C. § 3042(g), I consider the Government's case to be strong in this instance, particularly with respect to the flight risk posed by this Defendant.  My analysis of these statutory factors also indicates that the charges against Defendant are serious and may result in a mandatory minimum sentence of 50 years.  While the fact that Defendant has been detained for more than one year is significant and cannot be downplayed, the length of Defendant's pretrial detention in this instance is not grossly out of proportion to the 50-year mandatory minimum sentence that he faces if convicted.  Cf. Shareef, 907 F. Supp. at 1484 ("[F]undamental fairness requires that defendants, presumed innocent, not be required to serve a major portion of the sentence to which [they] would be subject prior to a determination of guilt.").

The parties have made a considerable effort to cast blame upon one another for the delay in bringing this case to trial.  My findings, however, reflect that neither side is particularly to blame for these delays.  While still in its early stages, this case was designated as complex.  Large amounts of materials were produced in discovery.  A significant amount of expert testimony is anticipated.  Defendant found it necessary to request a second attorney to represent him, in part because of the complexity of the case.  On these facts, I attribute most of the delay prior to Judge Conway's recusal to the sheer complexity of the case, which is not a product of either side's trial strategy.

Further, my findings reflect that neither party is to blame for prompting Judge Conway's recusal from this case, or for the delay occasioned by the transfer of this case to a new judge.  My finding in this regard does not depend on whether or when either side may

21

have filed, joined, or discussed a motion to recuse Judge Conway on or off the record.[3]

Based on my analysis and balancing of the above factors, I conclude that the unusual length of Defendant's pretrial detention in this case is outweighed by other factors, including the complexity of the case, the strength of the Government's case regarding the risk of flight, and the seriousness of the charges. Further, as I do not attribute the delay in bringing this case to trial to any blameworthy trial strategy by either side, this factor does not carry significant weight in my analysis. I will make every effort to expedite Defendant's trial so that his pretrial detention is not unduly prolonged from this day forward. In this regard, I have set a new trial date of October 15, 2003.

## III.   CONCLUSION

For the foregoing reasons, I conclude that neither the Bail Reform Act nor the Due Process Clause require that Defendant be released from pretrial detention at this time. Accordingly, Defendant shall continue to remain in custody before trial under the conditions specified in the prior detention orders.

---

[3]While I do not find Judge Conway's recusal to be the fault of either party in this case, such a finding would not excuse any misrepresentations by counsel as to what was said in their conversations with Judge Conway or with one another. Regardless of whether such conversations take place on or off the record, counsel have a professional responsibility to be candid and honest in their representations to the Court. Failure to meet these responsibilities will not be tolerated and may result in sanctions against an attorney or a referral of that attorney to disciplinary authorities.

**IT IS, THEREFORE, ORDERED** that Defendant David Hudak's *Supplemental Motion for Conditions of Release Because Mr. Hudak Has Now Spent One Year and Eight Days in Custody on a Non-Violent Charge Which the Government Has Characterized as a "Licensing and Regulatory Offense"* [Doc. No. 306] is **DENIED**.

**IT IS FURTHER ORDERED** that the alternative request for conditions of release stated in Defendant's *Motion to Chief United States District Court Judge for the District of New Mexico Requesting a Judicial Assignment to Any United States District Court Judge Who Can Commence the Trial During the Week of August 18, 2003, or in the Alternative, Request that Conditions of Release Be Set* [Doc. No. 281] is **DENIED**.

**SO ORDERED** this 29th day of August 2003, in Albuquerque, New Mexico.


_____
**M. CHRISTINA ARMIJO**
UNITED STATES DISTRICT JUDGE