**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA**,

    Plaintiff,

  v.            No. **CR 02-1574 MCA**

**DAVID HUDAK**,

    Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER comes before the Court on the following motions in limine:  (1) *United States' Motion in Limine Regarding Nonreviewability of Items Placed on the International Traffic In Arms Regulations for Purposes of Export Control* [Doc. No. 144] filed on July 28, 2003; (2) *United States Motion in Limine to Exclude Evidence Regarding the Purported Commercial Availability of Defense Services Training* [Doc. No. 148] filed on July 28, 2003; (3) *United States Motion in Limine to Exclude Evidence or Argument Regarding Entrapment* [Doc. No. 395] filed on September 25, 2003; (4) *Motion of the United States for Permission to File Additional Motions in Limine* [Doc. No. 396] filed on September 25, 2003; and (5) the United States' *Motion in Limine to Exclude Irrelevant Evidence Pertaining to the Culpability of Unindicted Corporations or Persons* [Doc. No. 400] filed on September 30, 2003.  Having reviewed the submissions of the parties, the relevant law, and being fully advised in the premises, the Court concludes that good cause exists for permitting the filing of the motions listed above and limiting the scope of evidence

and argument presented at trial regarding the following topics:  (1) the placement of items on the International Traffic in Arms Regulations (ITAR) for purposes of export control, (2) the purported commercial availability of defense services training, (3) evidence pertaining to the culpability of unindicted corporations or persons; and (4) the defense of entrapment *per se*.  The Court further determines that such limitations accord with the Federal Rules of Evidence and are not inconsistent with Defendant's constitutional rights with regard to the presentation of his defense at trial.  With respect to the affirmative defense of entrapment by estoppel, the Court denies the Government's motion in part without prejudice and defers ruling on that issue.

## I.     Standard of Review

Trial courts generally are vested with broad discretion regarding evidentiary rulings on motions in limine.  See generally United States v. Wagoner County Real Estate, 278 F.3d 1091, 1099 (10th Cir. 2002).   When the Government's efforts to exclude evidence might affect a criminal defendant's constitutional rights with regard to the presentation of his defense at trial, however, a more exacting standard of review may be implicated.  See United States v. Powell, 226 F.3d 1181, 1198-99 (10th Cir. 2000); Romano v. Gibson, 239 F.3d 1156, 1166 (10th Cir. 2001).  "Under the Sixth Amendment Compulsory Process Clause, criminal defendants generally have the right to present 'competent, reliable . . . exculpatory evidence.'"  DiBenedetto v. Hall, 272 F.3d 1, 7-8 (1st Cir. 2001) (quoting Crane v. Ky., 476 U.S. 683, 690 (1986)).  The Fifth Amendment Due Process Clause guarantees similar rights with regard to the presentation of evidence that is critical to the defense.  See Richmond v.

Embry, 122 F.3d 866, 871 (10th Cir. 1997);  Powell, 226 F.3d at 1199.

"Nonetheless, restrictions upon a defendant's ability to present witnesses are permissible" under certain conditions.  Powell, 226 F.3d at 1199; accord Romano, 239 F.3d at 1166 n.3.  Such restrictions may arise from the state's "legitimate interest in ensuring that reliable evidence is presented," and evidentiary exclusions will not violate the constitution "so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'"  United States v. Scheffer, 523 U.S. 303, 308 (1998) (quoting Rock v. Ark., 483 U.S. 44, 56 (1987)); accord DiBenedetto, 272 F.3d at 8-9.

To determine whether such evidentiary restrictions may apply in this case, the Court must examine both the relevance and the materiality of the proposed testimony at issue.  See Powell, 226 F.3d at 1199.  The inquiry into relevance "'includes an examination as to whether more traditional factors such as prejudice, issue and jury confusion weigh in favor of excluding the testimony.'"  Id. (quoting Richmond, 122 F.3d at 872).  The inquiry into materiality includes an examination of whether the proposed testimony is "'of such an exculpatory nature that its exclusion [would] affect[] the trial's outcome.'"  Id. (quoting Richmond, 122 F.3d at 872).

## II.   Nonreviewability of State Department Determinations Under the ITAR

Counts 3, 4, 6, 7, and 10 of the *Second Superseding Indictment* [Doc. No. 178] filed on August 6, 2003, charge Defendant with knowingly and willfully exporting or importing certain items designated as "defense services" or "defense articles" without a license or written authorization from the State Department, in violation of the Arms Export Control Act

3

(AECA), 22 U.S.C. §§ 2778(b)(2), (c), and the International Traffic in Arms Regulation (ITAR), 22 C.F.R. pts. 120-140 (2003).  The items in question are described as "training in Combat Marksmanship" (Count 3), "training in Explosive Methods of Entry into fixed structures (Count 4), "training in Close Quarters Battle" (Count 6), "training in Explosive Methods of Entry on aircraft" (Count 7), and "approximately 2,500 M-118 and/or M-118D SMAW (Shoulder-launched Multipurpose Assault Weapon) warheads" (Count 10).

By means of a motion in limine [Doc. No. 144], the Government seeks to preclude Defendant from presenting evidence for the purpose of challenging the State Department's certification of these items as "defense services" or "defense articles" under the ITAR. Defendant concedes that the definitions or listings of "defense services" and "defense articles" codified in 22 C.F.R. pts. 120 and 121, are not subject to judicial review.  See 22 U.S.C. § 2278(h); 22 C.F.R. § 128.1; United States v. Mandel, 914 F.2d 1215, 1223 (9th Cir. 1990); United States v. Martinez, 904 F.2d 601, 602-03 (11th Cir. 1990).  Accordingly, the correctness or appropriateness of these definitions or listings cannot be challenged in this proceeding.

Defendant asserts, however, that the jury in this case must still decide the more fact-specific question of whether the items charged in Counts 3, 4, 6, 7, and 10 of the *Second Superseding Indictment* fall within the definitions of "defense services" and "defense articles" that are codified in the provisions of the ITAR cited above.  The Government disagrees with this assertion.  According to the Government, "both the Court and the petit jury selected in this case must accept as true the determination by the Secretary that given

4

items, such as those exported in the instant case, are on the ITAR."  [Doc. No. 144, at 6.]
In other words, the Government contends that the AECA's prohibition on judicial review
applies not only to the definitions or listings codified in the ITAR but also to the State
Department's individual licensing determinations and fact-specific designations of particular
items as "defense articles" or "defense services" under the ITAR.

The Court concludes that the Government's contention is correct.  The prohibition on
judicial review of Executive Branch decisions under the ITAR includes not only the
regulations themselves but also individual licensing determinations or fact-specific
designations.  To conclude otherwise would be contrary to the regulatory scheme set forth
in the ITAR, which places licensing determinations and other fact-specific designations
within the exclusive jurisdiction of Executive Branch agencies.  See 22 C.F.R. §§ 102.4,
128.1.

Such exclusive jurisdiction of Executive Branch agencies does not violate the doctrine
of separation of powers embodied in the United States Constitution in this instance because,
"in the field of foreign affairs, Congress may delegate much more power to the executive
than it can in domestic matters."  United States v. Moller-Butcher, 560 F. Supp. 550, 553 (D.
Mass. 1983).  Further, the determination of which items should be subject to the export
controls contained in the ITAR involves policy judgments concerning areas of foreign affairs
and national security "which are best left to the executive branch" because they concern
political questions that are "incapable of resolution by any judicially discoverable or
manageable standard."  Id. at 554 (citing Baker v. Carr, 369 U.S. 186 (1962)).  Under these

particular circumstances, courts "should not intrude upon the authority of the executive in military and national security affairs, unless Congress has specifically expressed a contrary intention." Mandel, 914 F.2d at 1220 n.10 (citing Dep't of the Navy v. Egan, 484 U.S. 518, 530 (1988)).

> For these reasons, the ITAR cannot reasonably be construed to
>
> accommodate judicial factfinding on intricate licensing questions. Congress has designated the Secretary as the coordinating official in the area of export administration. It would severely undermine the Secretary's authority if judges and juries in individual criminal proceedings were permitted to reverse licensing determinations. And it would convert the judicial system into a policymaking forum, one in which the judiciary possesses significantly less expertise and resources than the Secretary. Congress did not intend this chaotic and potentially dangerous result.

United States v. Spawr Optical Research, Inc., 864 F.2d 1467, 1473 (9th Cir. 1988), quoted with approval in Mandel, 914 F.2d at 1220. It follows that the State Department can conclusively establish that a particular item is a "defense article" or "defense service" not only by listing that item in "the particular statute or its regulations, but also [by means of] "any license or order issued thereunder." Spawr Optical Research, Inc., 864 F.2d at 1473; see id. at 1468 (noting that the Secretary had determined that the items in question were on the "Commodity Control List" when he denied an application for an export license).

In this case, the Government has submitted citations to the relevant provisions of the ITAR as well as certifications from the appropriate State Department official to the effect that the  services and articles alleged in the *Second Superseding Indictment* (*i.e.*, training in Combat Marksmanship, training in Explosive Methods of Entry into fixed structures, training in Close Quarters Battle, training in Explosive Methods of Entry on aircraft, and

approximately 2,500 M-118 and/or M-118D SMAW warheads) are "defense services" or defense articles" under the ITAR.  The Court concludes that the State Department's certifications are akin to the "license or order" at issue in <u>Spawr Optical Research, Inc.</u>, 864 F.2d at 1473.  Accordingly, these certifications, in combination with the relevant provisions of the ITAR, are sufficient to conclusively establish that the items in question are "defense services" or "defense articles" under the ITAR.

The Government's motion in limine is, therefore, conditionally granted in part as to the issue of whether the items charged in Counts 3, 4, 6, 7, and 10 of the *Second Superseding Indictment* (*i.e.*, training in Combat Marksmanship, training in Explosive Methods of Entry into fixed structures, training in Close Quarters Battle, training in Explosive Methods of Entry on aircraft, and approximately 2,500 M-118 and/or M-118D SMAW warheads) are "defense services" or defense articles" under the ITAR.  If the State Department's certifications are admitted into evidence at trial, then Defendant will be precluded from presenting contrary evidence to the effect that the items listed in Counts 3, 4, 6, 7, and 10 of the *Second Superseding Indictment* are not "defense articles" or "defense services" under the ITAR.

It does not follow, however, that Defendant can be found guilty of one or more criminal offenses under the AECA or the ITAR based solely on the State Department's certifications and the allegations in the *Second Superseding Indictment*.  In order to meet the relevant constitutional requirements, the Government also must prove beyond a reasonable doubt at trial that Defendant imported or exported the items in question knowingly, willfully,

and without proper authorization.  See United States v. Gregg, 829 F.2d 1430, 1437 (8th Cir. 1987).

The Government's motion in limine is, therefore, denied in part to the extent that Defendant is not precluded from offering competent and reliable exculpatory evidence concerning whether items were imported or exported knowingly, willfully, and without proper authorization.  As noted above, Defendant's specific intent is an essential element of the AECA offenses alleged in the *Second Superseding Indictment*.

**III.    Commercial Availability of Defense Services Training**

The Government also moves to exclude evidence of the commercial availability of the type of training that Defendant is charged with exporting.  [Doc. No. 148.]  In response to this motion, Defendant states that he "will call several witnesses who owned businesses comparable to HEAT" and "who will testify that they provided commercial counter-terrorism training that is similar to the training [he] provided . . . to the UAE."   Defendant further asserts that these witnesses will testify that "their training on occasion encompassed foreign individuals" but that "they do not utilize a TAA (Technical Assistance Agreement) prior to providing counter-terrorism training because of their belief that they are not providing an AECA 'defense service' or 'defense product.'"  [Doc. No. 173.]

The Court concludes that such testimony is not relevant, material, or admissible for the purpose of challenging the State Department's determination that the items listed in Counts 3, 4, 6, and 7 of the *Second Superseding Indictment* are "defense services" which require a TAA or some other form of authorization before they can be lawfully exported.

As stated in the preceding discussion of the ITAR, such determinations by the State Department are not subject to judicial review, regardless of the commercial availability of the item or service in question.

Further, the fact that other persons may have violated the AECA or the ITAR by importing or exporting such items or services without proper authorization from the State Department would not provide Defendant with a legal justification for doing so in this case. "Under our system of criminal justice, the issue submitted to the jury is whether the accused is guilty or not guilty.  The jury is not asked to render judgment about non-parties, nor is it normally asked to render a verdict on the government's investigation."  United States v. McVeigh, 153 F.3d 1166, 1192 (10th Cir. 1998); accord United States v. Oberle, 136 F.3d 1414, 1422-23 (10th Cir. 1998); Romano, 239 F.3d at 1168.   Especially in a lengthy and complex trial such as this one, excluding such evidence concerning the culpability of third parties is necessary in order to keep "the focus of the trial upon the issue properly before the jury."  McVeigh, 153 F.3d at 1192.[1]

A narrow exception to this rule may apply in certain cases where a defendant seeks to introduce evidence that exculpates him and incriminates a co-defendant or third party, as when a defendant charged with murder seeks to present a "third-party culpability defense" to the effect that someone else committed the murder.  See, e.g., Alcala v. Woodford, 334 F.3d 862, 884-86 (9th Cir. 2003).  To fall within this exception, "there must be evidence that

---

[1]The Court's citation to the Tenth Circuit's opinion in McVeigh is intended to establish a general proposition of law and is not intended to raise any comparison between the offenses with which Mr. McVeigh was convicted in that case and the offenses with which Defendant Hudak is charged in this case.

there is a connection between the other perpetrators and the crime, not mere speculation on the part of the defendant." DiBenedetto, 272 F.3d at 8.

This exception does not apply here because evidence that the types of training allegedly exported by Defendant also were commercially available from other providers would not serve to exculpate Defendant.  Unlike the murder case cited above, Defendant's culpability and the culpability of another unindicted provider of such training are not mutually exclusive.  A jury could still find Defendant guilty of the relevant offenses charged in the *Second Superseding Indictment* notwithstanding the fact that other persons not connected with Defendant or his company were unlawfully exporting defense services as well.

To the extent that this type of evidence is not exculpatory, the fact that it may incriminate third parties does not provide an independent basis for its admission.  On the contrary, such evidence would only serve to lead the jury on "wild goose chases," Romano, 239 F.3d at 1168, and would pose a "real danger of distracting the jury from the case before it," DiBenedetto, 272 F.3d at 9.

For example, if the proposed witnesses are asked to admit under oath that they have knowingly and willfully exported defense services without proper authorization from the State Department, the Court may be presented with a collateral issue concerning whether to instruct these witnesses about their Fifth Amendment rights against self-incrimination.  See United States v. Castro, 129 F.3d 226, 230-31 (1st Cir. 1997).  In the event that these witnesses choose to invoke their Fifth Amendment rights, Defendant's Sixth Amendment

right to confront or impeach them may be limited.  See United States v. McClurge, 311 F.3d 866, 873-74 (7th Cir. 2002).

For these reasons, the Government's motion in limine is granted in part as to evidence presented for the purpose of proving that the services or training in question are, in fact, commercially available.  The Government's motion is denied in part, however, to the extent that evidence concerning the topic of commercial availability is not offered to prove the truth of the matter asserted, but rather for the limited purpose of providing exculpatory evidence regarding Defendant's state of mind.  As noted above, whether Defendant had the specific intent required to commit the offenses alleged in Counts 3, 4, 6, and 7 of the *Second Superseding Indictment* is a factual issue which the jury must consider.

## IV.   Culpability of Unindicted Corporations or Persons

In addition to moving to exclude evidence concerning the commercial availability of the defense services alleged in Counts 3, 4, 6, and 7 of the *Second Superseding Indictment*, the Government also moves to exclude evidence concerning the culpability of the corporations or persons who sold Defendant the alleged SMAW warheads described in Counts 10 and 11 of the *Second Superseding Indictment*.  [Doc. No. 400.]  In response to the latter motion, Defendant asserts that evidence concerning the culpability of such persons or corporations is relevant to his defense because it allegedly reveals an inconsistency in the Government's exercise of prosecutorial discretion.  According to Defendant, it is inconsistent for the Government to prosecute him for purchasing the alleged SMAW warheads while at the same time declining to take any enforcement action (whether civil or criminal) against

11

the persons or corporations who sold these items to him.  Defendant asserts that this inconsistency supports an inference that the sale of these items was not unlawful and, more specifically, that the items in question are not SMAW warheads but rather "lawful demolition charges."  [Doc. No. 427.]

Defendant's argument lacks merit for essentially the same reasons previously articulated with regard to evidence of the commercial availability of defense training.  "[T]he issue submitted to the jury is whether the accused is guilty or not guilty.  The jury is not asked to render judgment about non-parties, nor is it normally asked to render a verdict on the government's investigation."  McVeigh, 153 F.3d at 1192; accord Oberle, 136 F.3d at 1422-23; Romano, 239 F.3d at 1168.  The fact that the seller(s) of the items described in Counts 10 and 11 of the *Second Superseding Indictment* may not have been prosecuted or otherwise sanctioned by the Government does not necessarily mean that the sale was lawful or that the sale involved demolition charges rather than SMAW warheads.

Further, a mini-trial concerning the collateral issue of whether or why the Government has not taken enforcement action against the sellers would lead the jury astray and present a threat of unfair prejudice "as it would invite the jury to blame absent, unrepresented individuals and groups for whom there often may be strong underlying emotional responses." McVeigh, 153 F.3d at 1191-92.  Indeed, Defendant's efforts to cast aspersions on other persons or entities would likely invoke sentiments, emotions, or associations that have no relevance to the task of determining Defendant's guilt or innocence in this trial.

For these reasons, the Government's motion is granted in part with respect to evidence concerning the lack of enforcement action against other, unindicted persons or corporations involved in the sale of the items described in Counts 10 and 11 of the *Second Superseding Indictment*. To the extent that Count 10 involves an element of specific intent, however, the Government's motion is denied in part with respect to exculpatory evidence regarding this count that reasonably relates to Defendant's state of mind, *e.g.*, Defendant's knowledge, awareness, or beliefs at the time of the sale concerning the sellers' reputation in the business community or the circumstances of the sale.

## V.   Evidence of Entrapment

Finally, the Government moves to preclude Defendant from presenting evidence or argument concerning the affirmative defenses of entrapment *per se* and entrapment by estoppel. [Doc. No. 395.] Defendant previously alluded to the possibility that these defenses might be employed in this case. [Doc. No. 58, 265, 334, 347.] In response to the Government's motion, Defendant now states that he does not intend to present a defense of entrapment *per se* but does seek to present a defense of entrapment by estoppel with regard to the charges in Counts 10 and 11 of the *Second Superseding Indictment*. [Doc. No. 428.]

A defense of entrapment "is founded upon the rule of statutory construction that prohibits literal interpretation of a statute that produces absurd results." United States v. Garcia, 182 F.3d 1165, 1172 (10th Cir. 1999). Generally, this defense "concedes that the defendant's conduct satisfies the essential factual elements of guilt, but nonetheless refuses to apply the statute to an entrapped defendant to avoid creating an absurd result." Id. at

1173.

Entrapment by estoppel is a specific type of defense that is distinguishable from entrapment *per se*.  The Tenth Circuit has set forth the elements of the affirmative defense of entrapment by estoppel as follows:

> The defense of entrapment by estoppel is implicated where an agent of the government affirmatively misleads a party as to the state of the law and that party proceeds to act on the misrepresentation so that criminal prosecution of the actor implicates due process concerns under the Fifth and Fourteenth Amendments.  There must be an "active misleading" by the government agent, and actual reliance by the defendant.  Further, the defendant's reliance must be reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation.

United States v. Nichols, 21 F.3d 1016, 1018 (10th Cir. 1994) (citations omitted); accord United States v. Gutierrez-Gonzalez, 184 F.3d 1160, 1166 (10th Cir. 1999).[2]

When presented with a straightforward question of law concerning whether a defendant's proffer of evidence, if taken as true, is sufficient to constitute a triable issue of entrapment by estoppel, the Court can dispose of this issue by means of a motion in limine without any factual findings.  See, e.g., Gutierrez-Gonzalez, 184 F.3d at 1164.  As a general rule, however, it is seldom appropriate to rule out an entrapment defense prior to the presentation of any evidence at trial.  See United States v. Fadel, 844 F.2d 1425, 1431 (10th Cir. 1988); United States v. Aquino-Chacon, 109 F.3d 936, 939 n.3 (4th Cir. 1997) (citing United States v. Osborne, 935 F.2d 32, 38 (4th Cir. 1991)).

---

[2]In researching the defense of entrapment by estoppel, the Court notes that this defense applies in only a very narrow range of cases.

14

In this case, the Court cannot rely on the type of simple written proffer submitted by the defendant in <u>Gutierrez-Gonzalez</u>, 184 F.3d at 1164, in order to reach an intelligent pretrial ruling on the applicability of the defense of entrapment by estoppel.  Rather, this case involves a degree of complexity and contentiousness which makes it more appropriate to follow the general rule that this type of affirmative defense cannot be ruled out prior to the presentation of any evidence at trial.  For these reasons, the Government's motion in limine is denied in part without prejudice with respect to the defense of entrapment by estoppel regarding the charges in Counts 10 and 11 of the *Second Superseding Indictment*, and the Court defers ruling on this issue.

The Court reaches a different conclusion with respect to the defense of entrapment *per se*.  In response to the Government's motion on this issue, Defendant states that he does not intend to present a defense of entrapment *per se*, and Defendant has not proferred or presented any evidence regarding this particular defense.  Accordingly, it is appropriate to issue a pretrial ruling as to the defense of entrapment *per se* (as distinguished from the specific defense of entrapment by estoppel).  <u>See</u> <u>Osborne</u>, 935 F.2d at 38 (declining to overturn a district court's pretrial resolution of this issue "where there was absolutely no evidence to support an entrapment defense").  For these reasons, the Government's motion in limine is granted in part with respect to the issue of entrapment *per se* (as distinguished from the specific defense of entrapment by estoppel).

VI.    **Conclusion**

For the foregoing reasons, the Government's motions in limine concerning the nonreviewability of State Department determinations under the ITAR, the commercial availability of defense training, the culpability of unindicted persons or corporations, and the entrapment defenses [Doc. Nos. 144, 148, 395, and 400] are granted in part and denied in part under the conditions specified above.   The Court defers ruling on the issue of entrapment by estoppel.

**IT IS, THEREFORE, ORDERED** that *United States' Motion in Limine Regarding Nonreviewability of Items Placed on the International Traffic In Arms Regulations for Purposes of Export Control* [Doc. No. 144] is **GRANTED IN PART** and **DENIED IN PART** under the conditions specified above.

**IT IS FURTHER ORDERED** that the *United States Motion in Limine to Exclude Evidence Regarding the Purported Commercial Availability of Defense Services Training* [Doc. No. 148] is **GRANTED IN PART** and **DENIED IN PART** under the conditions specified above.

**IT IS FURTHER ORDERED** that the *United States Motion in Limine to Exclude Evidence or Argument Regarding Entrapment* [Doc. No. 395] is **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE** under the conditions specified above.

**IT IS FURTHER ORDERED** that the *Motion of the United States for Permission to File Additional Motions in Limine* [Doc. No. 396] is **GRANTED**.

16

**IT IS FURTHER ORDERED** that the United States' *Motion in Limine to Exclude Irrelevant Evidence Pertaining to the Culpability of Unindicted Corporations or Persons* [Doc. No. 400] is **GRANTED IN PART** and **DENIED IN PART** under the conditions specified above.

**SO ORDERED** this 8th day of October 2003, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
UNITED STATES DISTRICT JUDGE