**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA**,

       Plaintiff,

       v.                        No. **CR 02-1574 MCA**

**DAVID HUDAK**,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on the *United States' Motion in Limine to Exclude Non-Relevant Evidence:  Intended Use of Warheads* [Doc. No. 158] filed on July 28, 2003.  The Court held a hearing on the United States' motion on October 9, 2003. Having reviewed the evidence and argument presented by the parties, the relevant law, and being fully advised in the premises, the Court concludes that good cause exists for limiting the scope of evidence and argument presented at trial regarding the intended use of the alleged warheads.  The Court further determines that such limitations accord with the Federal Rules of Evidence and are not inconsistent with Defendant's constitutional rights with regard to the presentation of his defense at trial.

Trial courts generally are vested with broad discretion regarding evidentiary rulings on motions in limine.  See generally United States v. Wagoner County Real Estate, 278 F.3d 1091, 1099 (10th Cir. 2002).   When the Government's efforts to exclude evidence might affect a criminal defendant's constitutional rights with regard to the presentation of his

defense at trial, however, a more exacting standard of review may be implicated.  See United

States v. Powell, 226 F.3d 1181, 1198-99 (10th Cir. 2000); Romano v. Gibson, 239 F.3d

1156, 1166 (10th Cir. 2001).  "Under the Sixth Amendment Compulsory Process Clause,

criminal defendants generally have the right to present 'competent, reliable . . . exculpatory

evidence.'" DiBenedetto v. Hall, 272 F.3d 1, 7-8 (1st Cir. 2001) (quoting Crane v. Ky., 476

US. 683, 690 (1986)).  The Fifth Amendment Due Process Clause guarantees similar rights

with regard to the presentation of evidence that is critical to the defense.  See Richmond v.

Embry, 122 F.3d 866, 871 (10th Cir. 1997);  Powell, 226 F.3d at 1199.

        "Nonetheless, restrictions upon a defendant's ability to present witnesses are

permissible" under certain conditions.  Powell, 226 F.3d at 1199; accord Romano, 239 F.3d

at 1166 n.3.  Such restrictions may arise from the state's "legitimate interest in ensuring that

reliable evidence is presented," and evidentiary exclusions will not violate the constitution

"so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to

serve.'" United States v. Scheffer, 523 U.S. 303, 308 (1998) (quoting Rock v. Ark., 483 U.S.

44, 56 (1987)); accord DiBenedetto, 272 F.3d at 8-9.

        To determine whether such evidentiary restrictions may apply in this case, the Court

must examine both the relevance and the materiality of the proposed testimony at issue.  See

Powell, 226 F.3d at 1199.  The inquiry into relevance "'includes an examination as to

whether more traditional factors such as prejudice, issue and jury confusion weigh in favor

of excluding the testimony.'"  Id. (quoting Richmond, 122 F.3d at 872).  The inquiry into

materiality includes an examination of whether the proposed testimony is "'of such an

exculpatory nature that its exclusion [would] affect[] the trial's outcome.'" Id. (quoting

Richmond, 122 F.3d at 872).

Count 11 of the *Second Superseding Indictment* charges Defendant with knowingly

possessing a firearm, as that term is defined in 26 U.S.C. §§ 5845(a) and (f), that is not

registered to him in the National Firearms Registration and Transfer Record.  The alleged

firearm consists of approximately 2,500 M-118 and/or M-118D SMAW (Shoulder-launched

Multipurpose Assault Weapon) warheads.  As to this count, the Government moves to

exclude evidence concerning Defendant's intended use of the alleged SMAW warheads on

the grounds that such evidence is not relevant to this charge.  [Doc. No. 158.]

26 U.S.C. § 5861(d) makes it illegal for anyone to "receive or possess a firearm which

is not registered to him in the National Firearms Registration and Transfer Record."  In order

to establish that Defendant violated this statute, the Government must prove, among other

things, that the alleged SMAW warheads fall within the statutory definition of a "firearm."

The statutory definition of a "firearm" includes a "destructive device."  26 U.S.C. §

5845(a)(8).  The statute further defines a "destructive device" to include:

> (1)  any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C)
> rocket having a propellant charge of more than four ounces, (D) missile having
> an explosive or incendiary charge of more than on-quarter ounce, (E) mine, or
> (F) similar device;
>
> . . .
>
> (3) any combination of parts either designed or intended for use in converting
> any device into a destructive device as defined in subparagraphs (1) and (2)
> and from which a destructive device may be readily assembled.  The term
> "destructive device" shall not include any device which is neither designed nor
> redesigned for use as a weapon . . . .

26 U.S.C. §§ 5845(f)(1), (3).

Under these definitions, an item's intended use is not relevant if that item constitutes one of the fully assembled destructive devices described in 26 U.S.C. § 5845(f)(1), or if the item constitutes a combination of parts *designed* for use in converting any device into a destructive device as stated in 26 U.S.C. § 5845(f)(3).  See United States v. Ruiz, 73 F.3d 949, 951 (9th Cir. 1996); United States v. Urban, 140 F.3d 229, 234 (3rd Cir. 1998); United States v. Morningstar, 456 F.2d 278, 280 (4th Cir. 1972).

In this case, the Government has presented evidence that the items in question originally were designed to function as warheads in the military's Shoulder-Launched Multi-Purpose Assault Weapon (SMAW).  (Shamblin Aff.; Ex. 1 to Govt.'s Mot.; Tr. 10-9-03.) It was uncontested at the hearing that the device was designed solely for a military purpose. This evidence strongly supports the conclusion that the items in question are "destructive devices" under 26 U.S.C. § 5845(f)(1) or the design component of 26 U.S.C. § 5845(f)(3).

Defendant contends, however, that the items in question do not fall within the statutory definition of "destructive devices" for the following reasons.  First, Defendant contends that these items could constitute only one component of the SMAW and, therefore, are not fully assembled devices under 28 U.S.C. § 5845(f)(1).  Second, Defendant contends that the military did not accept the items in question for use in its SMAW program and that the items instead were "redesigned" or "demilitarized" such that they could be sold as commercial demolition charges not covered by the design component of 26 U.S.C. § 5845(f)(3).  Finally, Defendant contends that the items in question are completely adaptable

4

to commercial applications and were intended for use as commercial tools, such that they do not fall within the definition of a "destructive device" under the intent component of 26 U.S.C. § 5835(f)(3).

To support these contentions, Defendant quotes language from United States v. Johnson, 152 F.3d 618, 624 (7th Cir. 1998), to the effect that further inquiry is necessary unless "the device is inherently susceptible only to use that makes it a destructive device." According to Defendant, this language from Johnson implies that an item's intended use becomes relevant whenever it can be shown that the item has some possible legitimate commercial use.

The Court declines to follow this reasoning because it would lead to an absurd result and render some of the statutory language superfluous. See generally United States v. Turkette, 452 U.S. 576, 580 (1981) (avoiding absurd results); United States v. Collins, 313 F.3d 1251, 1254 (10th Cir. 2002) (avoiding constructions that renders statutory language superfluous). Even a fully assembled SMAW could potentially be used for some legitimate, nonmilitary purpose such as commercial demolition work or creating a special effect in a film. This fact, however, does not mean that components of the SMAW or other weapons specifically designed for military use may be excluded from the definition of "destructive devices" subject to registration under 26 U.S.C. § 5861(d). If that were the case, then the design component of 26 U.S.C. § 5835(f)(3) would be superfluous because the definition of a "destructive device" would always hinge on the possible intended use of the item in question and, more particularly, on a defendant's creativity in conjuring up pretextual

5

commercial applications for a weapon component.

The Court determines that the statutory definitions are more reasonably construed to place the initial focus on "the objective physical structure of the device, or the method of its normal operation." United States v. Homa, 441 F. Supp. 330, 332 (D. Colo. 1977), aff'd, 608 F.2d 407 (10th Cir. 1979); accord United States v. Dalpiaz, 527 F.2d 548, 551 (6th Cir. 1975); United States v. Posnjak, 457 F.2d 1110, 1116 (2d Cir. 1972)).  Under this approach, "Section 5845(f) does not exclude potentially constructive uses; it requires only that the device be designed for use as a weapon."  Ruiz, 73 F.3d at 951.  "Intent to use the components as a weapon (to assemble them into a device to be used as a weapon) is irrelevant when the parts are clearly designed to be used in constructing a device which is specifically regulated by § 5845(f)(1) or (2)."  Urban, 140 F.3d at 234.

It is only when there is a significant ambiguity regarding the objective physical structure of the device, or the method of its normal operation, that it becomes necessary to conduct an additional inquiry into the Defendant's intended use.  In this case, the Court concludes that there is no such ambiguity.  The objective physical structure of the device is entirely consistent with that of a SMAW warhead.  Further, the normal method of operation for this device is to place it within a SMAW for use in warfare by the military.  Defendant has neither presented nor proffered any evidence indicating that the alleged "redesign" or "demilitarization" of the warheads involved any changes to their objective physical structure, nor has Defendant presented evidence that these particular warheads are manufactured for commercial applications, such that their use in military weaponry is only a secondary,

6

alternative application.  Evidence adduced at the hearing indicated that the warhead itself was never redesigned, and never would be redesigned, for commercial application.  Rather, Defendant's expert merely speculated about a theoretical commercial application that involved adding a type of detonator to the existing warhead.  The Court notes, however, that Defendant's expert also testified that he had never actually used a warhead in this manner, and further that he had never seen warheads such as these enter the commercial market.  (Tr. 10-9-03.)

According to the Government's evidence, in the event the items were not accepted for use in the SMAW program, they were to be "demilitarized" either by detonation or by alteration involving removal of the explosive filler and crushing of the spun aluminum shell. The Government's expert also testified that those warheads which contained slight defects were sometimes used for training or testing purposes by the military, and that the type of defects at issue here only affected the warhead's reliability without changing its function. Thus, even assuming that the items in question contain some manufacturing defect which made them unsuitable for military use in the SMAW program, the normal method of their operation was to be detonated by the manufacturer or to be altered by having the explosive material extracted and the shell crushed.  This normal operation was not carried out in this case.  Rather, the explosive material remained in the shells, the shells remained in essentially the same configuration, and the warheads retained the physical characteristics of a military weapon.

For these reasons, the Court determines that the items described in Count 11 are

"destructive devices" under 26 U.S.C. § 5845(f)(1) or the design component of 26 U.S.C. § 5845(f)(3).  It follows that evidence regarding Defendant's intended use of these devices is not relevant or exculpatory for the purpose of defending against the allegations in Count 11. Accordingly, the Government's motion in limine is granted with respect the exclusion of such evidence for this purpose.

　　　　**IT IS, THEREFORE, ORDERED** that the *United States' Motion in Limine to Exclude Non-Relevant Evidence:  Intended Use of Warheads* [Doc. No. 158] is **GRANTED**.

　　　　**SO ORDERED** this 9th day of October 2003, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
UNITED STATES DISTRICT JUDGE