UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO



FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

03 OCT 14  AM 9: 35

CLERK ALBUQUERQUE

UNITED STATES OF AMERICA,

Plaintiff,

v.

No. CR 02-1574 MCA

DAVID HUDAK,

Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant *David Hudak's 28 U.S.C. 144 Motion to Recuse the Honorable M. Christina Armijo* filed in open court on October 11, 2003. Having reviewed the motion, the accompanying affidavit submitted by Defendant Hudak, the matters of record referenced in that affidavit, the relevant law, and being fully advised in the premises, I conclude that Defendant Hudak's motion and affidavit do not provide timely and sufficient grounds for my recusal from this case. I further conclude that there is no good cause for conducting an evidentiary hearing on this issue or referring Defendant's motion to another judge.[1]

## I.   BACKGROUND

Pursuant to a *Second Superseding Indictment* filed on August 6, 2003, Defendant Hudak is charged with conspiring to provide defense services to foreign persons without

---

[1] I denied this motion on the record at the hearing on October 11, 2003. This *Memorandum Opinion and Order* further explains my ruling.

license from the Department of State, using explosive materials during the commission of a felony, exporting defense services without a license, being an alien in possession of a firearm, importing defense articles without a license, and possessing unregistered destructive devices. [Doc. No. 178.]   Among the items that Defendant is charged with illegally possessing and importing are a quantity of approximately 2,500 warheads that were originally designed for military use in the United States' "Shoulder-launched Multipurpose Assault Weapon" program.

At the time that the *Second Superseding Indictment* was filed, the Honorable John Edwards Conway was presiding over this matter.  Defendant's trial before Judge Conway was set to commence on August 19, 2003.  [Doc. No. 117.]  Defendant's trial did not commence on that date, however, because Judge Conway recused on the eve of trial.  [Doc. No. 277.]  Following Judge Conway's recusal, Defendant Hudak asserted his right to a speedy trial and demanded that he be released from pretrial detention on due-process grounds.  [Doc. No.281, 306.]

On August 18, 2003, this case was randomly reassigned to me.  [Doc. No. 282.]  I held hearings on Defendant's motions for pretrial release and, in a *Memorandum Opinion and Order* filed on August 29, 2003, I denied these motions.  [Doc. No. 323.]  In my *Memorandum Opinion and Order*, I stated that:

> While the Government alleges no link between the crimes Defendant is alleged to have committed and any conspiracy to commit unlawful acts of violence against the people of the United States or any other country, it is reasonable to infer from the available information in the record that the large quantity of warheads at issue here could be readily assembled for detonation and that there is no obvious, legitimate reason why Defendant needed to

2

> stockpile these items in a bunker on New Mexico ranchland in order to
> conduct a lawful business here.

[Id. ¶ 38.] I also stated that: "I will make every effort to expedite Defendant's trial so that

his pretrial detention is not unduly prolonged from this day forward. In this regard, I have

set a new trial date of October 15, 2003." [Id. at 22.]

Defendant immediately appealed my ruling on his motions for pretrial release. [Doc.

No. 321.] My ruling was affirmed in an *Order and Judgment* issued by the Tenth Circuit

on October 9, 2003. See United States v. Hudak, No. 03-2203, slip. op. at 1 (10th Cir. Oct.

9, 2003). In its *Order and Judgment*, the Tenth Circuit stated that: "We agree with the

district court's very thorough assessment of [Defendant's due process] claim, and we affirm

for the reasons stated in the district court's order, particularly in light of the imminent trial

setting." Id. The Tenth Circuit reviewed the factors I considered in my ruling and further

concluded that: "The district court's assessment of the factors was thorough, complete, and

its findings were correct." Id.

During the period when Defendant's interlocutory appeal was pending, I conducted

a number of pretrial hearings and status conferences as part of my effort to bring this case

to trial in an expeditious manner. I also issued pretrial rulings on some of the motions in

limine that have been filed in this matter. [Doc. No. 441, 452.]

On October 9, 2003, I conducted an evidentiary hearing regarding the *United States'*

*Motion in Limine to Exclude Non-Relevant Evidence: Intended Use of Warheads.* [Doc. No.

158.] During this evidentiary hearing, the Government presented the testimony of an expert

witness and a number of exhibits consisting of military weapons or weapon components,

3

including the type of SMAW warhead that Defendant is charged with illegally possessing and importing in this case, that counsel indicated had been rendered "inert" or were "dummies." Defendant also presented an expert witness who was shown an explosive device (taken from a bag atop defense counsel's table) that counsel represented as a "dummy," or having been rendered "inert," and that was a type of explosive device used in commercial applications. (It appeared to the Court that there were other devices in the bag, and this was later confirmed by Mr. Gorence.) Both experts testified about the destructive capabilities of some of these devices (when used in their non-inert form), as well as some of the safety concerns associated with the use and storage of these devices. [Tr. 10-9-03.]

Following this evidentiary hearing, I filed a *Memorandum Opinion and Order* granting the United States' motion regarding the intended use of warheads. [Doc. No. 452.] In this *Memorandum Opinion and Order*, I stated that: "Evidence adduced at the hearing indicated that the warhead itself was never redesigned, and never would be redesigned, for commercial application." [Id. at 7.] I also concluded that "evidence regarding Defendant's intended use of these devices is not relevant or exculpatory for the purpose of defending against the allegations in Count 11. Accordingly, the Government's motion in limine is granted with respect the exclusion of such evidence for this purpose." [Id. at 8.]

On October 8, 2003, the Government filed an exhibit list in this matter which indicates that a number of firearms, ammunition, and explosive devices (rendered inert) will be offered as exhibits in this case. [Doc. No. 443.] Defendant has indicated that he does not intend to identify his exhibits prior to trial. [Doc. No. 432.]

At a pretrial status conference on October 10, 2003, I addressed a number of housekeeping matters, including the handling of the parties' exhibits and exhibit lists. Among other things, I instructed counsel for both parties to advise the United States Marshals Service of exhibits consisting of weapons, weapon components, inert destructive devices, or similar items so that such exhibits could be properly identified and screened before being brought into the Courthouse. I deemed it necessary to give this directive after speaking with a representative of the Marshals Service, who expressed a concern that the devices presented at the hearing on October 9, 2003, were brought into the courthouse without their knowledge. I was informed by the Marshals Service that it is their standard procedure to require that such devices (or models of same) be identified and screened by an official with the requisite expertise, e.g., an agent of the Bureau of Alcohol, Tobacco, and Firearms (ATF), before they are allowed into the courthouse. My instructions to counsel in this regard simply implemented the standard procedure of the Marshals Service. It is the United States Marshals Service which is charged with ensuring the security of the courthouse.

At the pretrial status conference on October 10, 2003, defense counsel requested additional time to meet with his client prior to a pretrial hearing concerning the Government's exhibits that was scheduled to commence at that time. I thus decided to accommodate defense counsel's request by holding an additional pretrial hearing over the Columbus Day weekend. Accordingly, the pretrial hearing was postponed until Saturday, October 11, 2003.

At the pretrial hearing on that date, Defendant *David Hudak's 28 U.S.C. 144 Motion to Recuse the Honorable M. Christina Armijo* was filed in open court.  Defendant Hudak's motion is based on an accusation that I have "demonstrated unreasonable concerns about my personal safety as well as personal prejudice and bias" him.

To support this accusation, Defendant Hudak refers to: (1) statements contained in my written rulings regarding his motions for release from pretrial detention [Doc. No. 323] and the Government's motion in limine regarding the intended use of warheads [Doc. No. 452] ; (2) comments I made about the handling of exhibits at the pretrial hearings on October 9, 2003, and/or October 10, 2003; and (3) hearsay from fellow inmates regarding sealed affidavits filed in another, unrelated case captioned United States v. Cisneros.  Defendant Hudak admits in his affidavit that he has not seen the sealed affidavits in the Cisneros case, that he was not present at the pretrial status conference on October 10, 2003, and that he makes his affidavit based on what his lawyers told him about that hearing.  He requests that an evidentiary hearing be held and that his motion be referred to another judge.

## II.   ANALYSIS

The analysis of Defendant Hudak's motion for recusal begins with a discussion of the legal standard of "bias or prejudice" under 28 U.S.C. §§ 144 and 455.  The Court then considers the allegations in the affidavit signed by Defendant Hudak under 28 U.S.C. § 144.

There are two federal statutes under which United States District Judges may be disqualified from presiding over a matter on the grounds of bias or prejudice.  First, Congress enacted 28 U.S.C. § 144 to provide a procedure under which parties may file an

affidavit seeking disqualification of a United States District Judge on the grounds of "personal bias or prejudice." Congress then passed the legislation currently codified at 28 U.S.C. § 455 to provide general standards for disqualification of all types of federal judges, whether *sua sponte* or upon motion of a party.[2]

In Liteky v. United States, 510 U.S. 540, 548 (1994), the Supreme Court explained the relationship between 28 U.S.C. § 144 and 28 U.S.C. § 455 as follows:

> paragraph (b)(1) [of 28 U.S.C. § 455] entirely duplicated the grounds of recusal set forth in [28 U.S.C.] § 144 ("bias or prejudice") but (1) made them applicable to *all* justices, judges, and magistrates (and not just district judges), and (2) placed the obligation to identify the existence of those grounds upon the judge h[er]self, rather than requiring recusal only in response to a party affidavit.

In addition, subsection (a) of 28 U.S.C. § 455 contains a "catchall" provision that effectively requires all potential grounds for recusal (including "bias or prejudice") "to be evaluated on an *objective basis*" such that "recusal was required whenever 'impartiality might reasonably be questioned.'" Liteky, 510 U.S. at 548 (quoting 28 U.S.C. § 455(a)). The catchall provision in 28 U.S.C. § 455(a), however, does not eliminate the "extrajudicial source" limitation in 28 U.S.C. §§ 144 and 455(b)(1), under which recusal on the grounds of "bias or prejudice" typically is required only when the bias or prejudice arises from a source outside judicial proceedings.

According to the statutory interpretation set forth in Liteky, 510 U.S. at 550-55, this "extrajudicial source" limitation is implied by the statutes' pejorative use of the words "bias

---

[2]Defendant has brought no grounds for recusal under 28 U.S.C. § 455, and I determine that there are no grounds for my recusal under that statute.

or prejudice." In using these words, Congress did not intend to describe all types of unfavorable disposition towards an individual. "Impartiality is not gullibility," and the statutes do not demand that a court approach matters before it with "child-like innocence." Id. at 552. Rather, the words "bias or prejudice" in 28 U.S.C. §§ 144 and 455(b)(1) "connote a favorable or unfavorable disposition. or opinion that is somehow *wrongful* or *inappropriate*, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess . . . , or because it is excessive in degree." Liteky, 510 U.S. at 550; accord United States v. Young, 45 F.3d 1405, 1415 (10th Cir. 1995).

Under this interpretation of the statutory language, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky, 510 U.S. at 555. Further,

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

Id.; accord United States v. Pearson, 203 F.3d 1243, 1277 (10th Cir. 2000). While opinions or predispositions acquired outside the context of judicial proceedings may be a significant (and often determinative) factor in assessing bias or prejudice, the fact that an opinion or predisposition was acquired in this manner is not always "a *sufficient* condition for 'bias or prejudice' recusal. since *some* opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will *not* suffice." Liteky, 510 U.S. at 554.

The standards for recusal set forth in 28 U.S.C. §§ 144 and 455 effectively incorporate the relevant provisions of the Code of Conduct for United States Judges as well as the requirement of an impartial decisionmaker under the Due Process Clause of the Fifth Amendment to the United States Constitution. See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 858 n.7 (1988) (Code of Conduct for United States Judges); Walberg v. Israel, 766 F.2d 1071, 1076-77 (7th Cir. 1985) (Due Process Clause). To guarantee Defendant's rights to due process in this case, the Court primarily relies on "the adversary system and the presumption of innocence. When defense counsel vigorously represents his client's interests and the trial judge assiduously works to impress jurors with the need to presume the defendant's innocence, . . . a fair result can be obtained." Holbrook v. Flynn, 475 U.S. 560, 567-68 (1986).

The fact that the Court has detained Defendant before trial or employed certain security measures relating to the evidence in this case does not mean that the adversary system or the presumption of innocence have been abandoned. Due process does not require that the Court "eliminate from trial procedures every reminder that the State has chosen to marshal its resources against a defendant to punish him for allegedly criminal conduct." Id. Further, the presumption that Defendants are innocent until proven guilty beyond a reasonable doubt does not preclude the Court from ordering Defendant to be detained before his trial has begun, or from implementing security precautions, based upon a lesser standard of proof such as probable cause or a preponderance of the evidence. See Bell v. Wolfish, 441 U.S. 520, 533 (1979); United States v. Nichols, 841 F.2d 1485, 1500 (10th Cir. 1988).

With respect to such pretrial matters that do not involve a jury, another presumption also applies, namely that judges, unlike juries, are capable of distinguishing the factors on which security measures are based from the finding of guilt beyond a reasonable doubt based on admissible evidence that is required to support a criminal conviction. See United States v. Zuber, 118 F.3d 101, 104 (2d Cir. 1997).

Because judges are presumed to be capable of making such distinctions, the federal recusal statutes must not be construed so broadly as to raise a contrary presumption that would effectively mandate recusal "'upon the merest unsubstantiated suggestion of personal bias or prejudice.'" United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993) (quoting Franks v. Nimmo, 796 F.2d 1230, 1234 (10th Cir. 1986)). "The statute is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." Id.; accord Nichols v. Alley, 71 F.3d 347, 351 (10th Cir. 1995). Further, "a judge has as much obligation not to recuse h[er]self where there is no reason to do so as [s]he does to recuse h[er]self when the converse is true." United States v. Greenspan, 26 F.3d 1001, 1005 (10th Cir. 1994); accord Nichols, 71 F.3d at 351.

### A.    28 U.S.C. § 144

28 U.S.C. § 144 provides, in part:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

"Although § 144 provides for the assignment of the case to 'another judge' to hear the proceeding once a 'timely and sufficient affidavit' alleging bias or prejudice is proffered, it is still within the discretion of the trial court to determine, at the outset, the legal sufficiency of the affidavit supporting the motion." Holmes v. NBC/GE, 925 F. Supp. 198, 201 (S.D.N.Y. 1996); accord United States v. Azhocar, 581 F.2d 735, 738 (9th Cir. 1978). This conclusion holds true regardless of whether the Government joins in the request for referral of the motion to another judge, particularly where such referral would cause unnecessary delay. See United States v. Mitchell, 377 F. Supp. 1312, 1315 (D.D.C. 1974), aff'd, 559 F.2d 31, 131 (D.C. Cir. 1976). If the affidavit does not provide timely or sufficient grounds for recusal, then no further hearing is required, particularly where such a hearing would cause unnecessary delay. See id.; United States v. Barnes, 909 F.2d 1059, 1072 (7th Cir. 1990). In this regard, "it is the duty of the judge not to permit the use of a motion or affidavit of prejudice as a means to accomplish delay and otherwise defeat the orderly administration of justice." United States v. Hall, 424 F. Supp. 508, 534 (D. Okla. 1975), aff'd, 536 F.2d 313 (10th Cir. 1976).

Counsel have provided no contrary authority in their motion. Cf. United States v. Almarez, 306 F.3d 1031, 1041 (10th Cir. 2002) (stating that a "perfunctory and cursory reference without citation to authority in support of a legal argument is inadequate to warrant consideration."); United States v. Graham, 305 F.3d 1094, 1106 (10th Cir. 2002) (similar). Accordingly, I conclude that it is not necessary to refer Defendant's motion for recusal to another judge or to conduct an evidentiary hearing regarding this motion.

When an affidavit is filed pursuant to 28 U.S.C. § 144, "the trial judge is called upon to decide only whether the affiant has met three requirements: (1) whether a party has made and filed a timely affidavit; (2) whether the affidavit is accompanied by a good faith certificate of counsel; and (3) whether the affidavit is legally sufficient." United States v. Kehlbeck, 766 F. Supp. 707, 709 (S.D. Ind. 1990). If all three requirements are met, "the judge has no alternative but to recuse h[er]self, no matter how defamatory the charges may be and even if they are known to the Court to be false." United States v. Hanrahan, 248 F. Supp. 471, 475 (D.D.C. 1965) (citing Morse v. Lewis, 54 F.2d 1027, 1031 (4th Cir. 1932)).

The statute must be strictly construed, however, to prevent abuse and safeguard against frivolous attacks on the dignity and integrity of the judiciary. See United States v. Sykes, 7 F.3d 1331, 1339 (7th Cir. 1993); Town of E. Haven v. E. Airlines, Inc., 304 F. Supp. 1223, 1225 (D.Conn. 1969); Bumpus v. Uniroyal Tire Co., 385 F. Supp. 711, 713 (E.D. Pa. 1974). In particular, mere opinions, rumors, or vague gossip are not legally sufficient grounds for recusal. See Berger v. United States, 255 U.S. 22, 34 (1921); Sykes, 7 F.3d at 1339. "Because the affiant's version of the facts cannot be contested, the affiant is required to plead with particularity those facts that establish the judge's bias." Kehlbeck, 766 F. Supp. at 710. Where an affidavit is not based on personal knowledge of the affiant, "informant, and time, place, occasion of, and the judge's [actions], and that the bias or prejudice is *personal*, all must be set out in the affidavit. This alone will enable the affidavit to bear on its face that evidence of good faith which is necessary before it can be held to be legally sufficient." Johnson v. United States, 35 F.2d 355, 357 (W.D. Wash. 1929) (citing

Berger, 255 U.S. at 34). Further, "[w]hile we do not say that hearsay may not in some circumstances constitute a basis for recusal, the fact that an application is based entirely on hearsay may be taken into account in judging the sufficiency of the affidavit." Hodgson v. Liquor Salesmen's Union Local No. 2, 444 F.2d 1344, 1349 (2nd Cir. 1971); accord Hall, 424 F. Supp. at 534.

### B.    Requirement that Affidavit be Filed by a Party in the Present Case

As noted above, the first requirement under 28 U.S.C. § 144 is that the affidavit must be timely filed by a party. Since the affidavit must be filed *by a party*, "[t]his requirement is not met by an affidavit signed by an attorney." United States v. Cohen, 644 F. Supp. 113, 115 (E.D. Mich. 1986) (citing United States ex rel. Wilson v. Coughlin, 472 F.2d 100 (7th Cir. 1973)). Similarly, a defendant may not incorporate by reference the affidavits of non-parties into his affidavit. See Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987). "Also not subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings." Liteky, 510 U.S. at 551. Accordingly, only an affidavit filed a party in the present case is sufficient to invoke the procedure for recusal under 28 U.S.C. § 144. Defendant's attempt to reference and incorporate unspecified documents filed in a prior, unrelated case (United States v. Cisneros) cannot satisfy the prerequisites for recusal under 28 U.S.C. § 144 in this case.

### C.    Timeliness Requirement

With regard to the requirement of timeliness, I note that Defendant Hudak's motion and affidavit were filed only four days prior to the commencement of the trial. "The law is

well settled that one must raise the disqualification of the judge at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification." United States v. Patrick, 542 F.2d 381, 390 (7th Cir. 1976); accord Sykes, 7 F.3d at 1339. The analysis of timeliness "turns not only on the actual time elapsed but particularly on the factor whether the affiant has participated in substantial pretrial motions between the time he first learned of the asserted bias and the time he filed his § 144 request." United States v. Boffa, 513 F. Supp. 505, 510 (D. Del. 1981). "The judicial process can hardly tolerate the practice of a litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming." Smith v. Danyo, 585 F.2d 83, 86 (3rd Cir. 1978). Similarly, "it is the duty of the judge not to permit the use of a motion or affidavit of prejudice as a means to accomplish delay and otherwise defeat the orderly administration of justice." Hall, 424 F. Supp. at 534. This case presents exactly such a scenario.

I find that Defendant Hudak has not shown good cause for the delay in bringing his motion with respect to events or concerns that preceded the pretrial hearings on October 9 and 10, 2003. Rather, it appears that he has awaited favorable rulings on substantial pretrial motions and then sought my recusal when they were not forthcoming, or for purposes of delaying the trial. See Smith, 585 F.2d at 86; Hall, 424 F. Supp. at 534.

This is particularly true with respect to Defendant Hudak's allegations of bias or prejudice arising from my findings contained in the *Memorandum Opinion and Order* filed on August 29, 2003. [Doc. No. 323.] Defendant Hudak challenged these findings by means

of interlocutory appeal [Doc. No. 321] and did not assert that they provided grounds for my recusal until after a favorable ruling on his interlocutory appeal was not forthcoming from the Tenth Circuit. In this regard, I note that the Tenth Circuit affirmed my ruling on the pretrial detention issue on October 9, 2003, and Defendant Hudak filed his affidavit under 28 U.S.C. § 144 on October 11, 2003. Thus, Defendant Hudak's allegations regarding my findings in the *Memorandum Opinion and Order* filed on August 29, 2003, are untimely.

Defendant Hudak's affidavit also refers to statements attributed to me in the *Memorandum Opinion and Order* filed on October 9, 2003, and at the pretrial hearings on October 9, 2003, and/or October 10, 2003. I consider these particular accusations to be timely, as they were raised within one or two days after the statements in question were allegedly made.

### D.   Requirement of a Certificate of Good Faith by Counsel

Turning to the next requirement, it appears that Defendant Hudak's affidavit is accompanied by a certificate of his counsel of record stating that the affidavit is made in good faith. I note, however, that defense counsel's certificate only refers to the good faith of the affidavit itself and does not state that the motion signed by counsel was filed in good faith. I also note that, at the hearing on October 11, 2003, defense counsel stated that this motion was filed at the insistence of their client. The apparent absence of certification of counsel's own good faith may render Defendant Hudak's motion deficient for purposes of 28 U.S.C. § 144. See Bhd. of Locomotive Fireman and Enginemen v. Bangor and Aroostook R.R. Co., 380 F.2d 570, 578 n.18 (D.C. Cir. 1967).

E.    **Sufficiency of Defendant Hudak's Affidavit**

I next examine whether the allegations in Defendant Hudak's affidavit provide sufficient grounds for recusal under 28 U.S.C. § 144.  These allegations fall into three categories:  (1) statements I made in my written rulings on Defendant's motions regarding his pretrial detention and the Government's motion in limine regarding the intended use of warheads; (2) statements regarding the handling of the exhibits at the hearings on October 9, 2003, and/or October 10, 2003; and (3) hearsay from fellow inmates regarding affidavits filed in the Cisneros case.

I first address the statements in my written rulings.  As noted above, I must accept the factual allegations in Defendant's affidavit as true with respect to what was said in those rulings.  Nevertheless, I am not required to accept the timeliness of Defendant's allegations which refer to statements which preceded the pretrial hearings on October 9 and 10, 2003, nor I am required to accept Defendant's general conclusions or opinions about the legal significance of my statements.  See Berger, 255 U.S. at 34.  Further, I may review Defendant's allegations against the backdrop of the entire record in this case in order to determine their context.  See Mitchell, 377 F. Supp. at 1326 n.2; United States v. Orbiz, 366 F. Supp. 628, 630 (D. Puerto Rico 1973).

It is black-letter law that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."  Liteky, 510 U.S. at 555.

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

Id.; accord Pearson, 203 F.3d at 1277.

The written rulings at issue here are based on my review of the record and the evidentiary hearings that were held on the motions to which these rulings pertain. As such, do not provide grounds for recusal because they reflect "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings." Liteky, 510 U.S. at 555.

Moreover, there is no reasonable basis for concluding that my written rulings "display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. With regard to the statement contained in the *Memorandum Opinion and Order* filed on August 29, 2003, I note that the language quoted in Defendant Hudak's affidavit is only an incomplete portion of a sentence. Taken in context, the entire sentence reads:

> *While the Government alleges no link between the crimes Defendant is alleged to have committed and any conspiracy to commit unlawful acts of violence against the people of the United States or any other country*, it is reasonable to infer from the available information in the record that the large quantity of warheads at issue here could be readily assembled for detonation and that there is no obvious, legitimate reason why Defendant needed to stockpile these items in a bunker on New Mexico ranchland in order to conduct a lawful business here.

[Id. ¶ 38 (emphasis added).] The first part of the sentence, which is omitted from the quotation in Defendant Hudak's affidavit, makes clear that I do not consider Defendant Hudak to be involved in any violent acts which would pose a threat to my safety.

Nevertheless, Defendant Hudak's affidavit opines that the statements he quotes from my written rulings evince a "blanket rejection of commercial use and storage of explosives," and that somehow such a "blanket rejection" demonstrates "fear" on my part. I am not

required to accept such conclusory opinions, nor do such conclusory opinions find any reasonable support in the factual allegations in Defendant Hudak's affidavit. Rather than constituting a "blanket rejection," the rulings and statements in question are narrowly tailored to the issues and evidence presented. The *Memorandum Opinion and Order* filed on October 10, 2003, only restricts evidence regarding Defendant's intended use of warheads for purposes of Count 11 of the *Second Superseding Indictment*. Evidence pertaining to the remaining counts of the indictment is not addressed in that ruling. [Doc. No. 452.] Further, my finding in the *Memorandum Opinion and Order* filed on August 29, 2003, only reflects the fact that I could not find evidence in the record before me concerning an "obvious, legitimate reason" why Defendant needed to stockpile SMAW warheads at his ranch in New Mexico. This finding does not necessarily preclude Defendant from presenting such a reason at trial, as it only pertains to the grounds for his pretrial detention.

I next turn to the statements I made at the hearings on October 9, 2003, and October 10, 2003, regarding the handling of exhibits which consist of firearms, ammunition, weapons, weapon components, or similar devices. As Defendant Hudak was not present at one of these hearings and does not quote from an official transcript of those proceedings, the fact that his allegations consist of hearsay must be taken into consideration in ruling on the sufficiency of his affidavit. See Hodgson, 444 F.2d at 1349. It is also appropriate to review the entire record of the hearings in question to determine the context in which my statements were made. See Mitchell, 377 F. Supp. at 1326 n.2; Orbiz, 366 F. Supp. at 630.

Taken in context, it is clear that my concerns were based on information I received from the United States Marshals Service to the effect that standard procedures regarding the handling of these types of exhibits may not have followed when they were brought into the courthouse for the evidentiary hearing on October 9, 2003.  In this regard, I prefaced my remarks at the hearing on October 10, 2003, by stating that "my concern is that the Marshals Service tells me. and the Court Security Officers with whom I've conferred tell me. that they were not aware that these devices were brought into the building." [Tr. 10-10-03.]  I then directed counsel for both parties to specifically identify these types of devices to the Court Security Officer and the Marshal before they are brought into the building.  I also advised counsel for both parties that I will not permit such devices in the building until the ATF or the Marshal determine that the devices are safe.

These directives implement the standard procedure of the Marshals Service, which has a unique statutory duty to provide security for judges and other occupants of the courthouse building.  See 28 U.S.C. 566(a).  A major part of that mission is to ensure that courthouses and courtrooms are safe.  See *I-B Guide to Judiciary Policies and Procedures*. ch. 9.

My involvement in such court-security issues falls within my official duties as the presiding judge and is not unique to this case.  Applicable regulations and case law contemplate that the Courts must confer with the United States Marshals Service regarding such issues.  See *I-B Guide to Judiciary Policies and Procedures* ch. 9, §1 ("It is essential that courts establish effective liaison with the USMS' office in their districts and become

familiar with their policies and programs."); Zuber, 118 F.3d at 104 (noting approvingly that "district judges regularly consult with the Marshals Service regarding precautions to be taken at hearings involving persons who are in custody"); Brewster v. Bordenkircher, 745 F.2d 913, 916 (4th Cir. 1984) (holding that a district judge should consult with the United States Marshals Service when security measures are required beyond those normally provided). The Judges Manual promulgated by the Judicial Conference also instructs that: "All members of the court family need to think about and practice effective security precautions." 3A *Guide to Judiciary Policies and Procedures* ch. VI.

"[T]rial judges must have wide discretion in maintaining courtroom security and in protecting their processes from outside interference." United States v. Scarfo, 850 F.2d 1015, 1024 (3rd Cir. 1988). Consideration of this issue by the security personnel transcends this case, and is not evidence of any real or perceived personal fear of a defendant which would warrant recusal. In this regard, I note that my instructions at the hearing regarding the handling of exhibits apply equally to both parties. They also apply to exhibits which are not associated in any way with Defendant Hudak, such as the inert 105 millimeter artillery shell that counsel for the Government used for demonstrative purposes at the evidentiary hearing on October 9, 2003. Accordingly, my instructions regarding the handling of the exhibits do not support a reasonable inference of any irrational fear or bias directed against Defendant Hudak. In carrying out my official duties, I am not required to approach court security issues with "child-like innocence." Liteky, 510 U.S. at 552. Under these circumstances, it is entirely reasonable to discharge my official duties with respect to court-

security matters by directing counsel for both parties to comply with a standard procedure of the Marshals Service for the handling of these types of exhibits.  In carrying out these official duties in this manner, I do not thereby create a circumstance that would provide grounds for recusal.

III.   **CONCLUSION**

For the foregoing reasons, Defendant Hudak's motion for my recusal pursuant to 28 U.S.C. § 144 must be denied.

**IT IS, THEREFORE, ORDERED** that Defendant *David Hudak's 28 U.S.C. 144 Motion to Recuse the Honorable M. Christina Armijo* filed in open court on October 11, 2003, is **DENIED**.

**SO ORDERED** this 14ᵗʰ day of October 2003, in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE